Lynn T. DRYDEN, Plaintiff,

v.

TIFFANY & COMPANY, Defendant.

No. 95 Civ. 0345 (LAK).

United States District Court,
S.D. New York.

March 25, 1996.

Patrick J. Leddy, Cleveland, OH, for Plaintiff.

Kenneth W. DiGia, Epstein Becker & Green, P.C., New York City, for Defendant.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* (the "ADEA"), and corresponding provisions of New York State and City law. The plain-

tiff claims that she was terminated as a sales person at Tiffany & Company, the well known jeweler, on the basis of her age (late 40s) and race (Asian). Tiffany moves for summary judgment dismissing the complaint.

### Facts

The facts pertinent to the resolution of this motion may be stated briefly.

Ms. Dryden began her employment with Tiffany in 1971 as a retail sales professional and held a variety of positions over the ensuing 18 years. Beginning on January 1, 1989, she worked in the silver jewelry department on the second floor of Tiffany's East 57th Street store in Manhattan where she remained until she was terminated effective July 1, 1993. For most of her career, her job performance concededly was acceptable. .

Tiffany claims that Ms. Dryden's performance began to decline in 1991 and that she repeatedly was cited for security violations ranging from showing more than the maximum permitted number of pieces of merchandise to a customer at one time to leaving merchandise unattended in a customer area. These episodes culminated in an incident on June 12, 1993, in which Ms. Dryden allegedly committed four separate security violations, which Tiffany asserts led to her termination. The events relied upon by Tiffany are corroborated by documents said by Tiffany to be contemporaneous reports of the incidents. In one or two instances, Tiffany's accounts are supported by photographs made from security surveillance tapes.

Ms. Dryden tells a different story. She sustained a job related injury in 1991 that led to a workers' compensation claim and complaints to management by her about an allegedly defective drawer. The alleged security violation reports, she says, commenced thereafter "without my knowledge for the most part." (Dryden Aff. ¶ 8) She denies knowledge prior to October 1992 of the policy prohibiting a salesperson from having more than five pieces out of the showcase at a single time and thus seeks to explain away the earlier incidents relied upon by Tiffany. (*Id.* ¶¶ 10–13) She admits a violation of the policy on October 20, 1992—four days after signing a written evaluation which called the

policy to her attention—but seeks to justify it on the theory that she was cleaning her showcase. (*Id.* ¶ 14) With respect to other alleged violations, she either denies advance knowledge of the policy in question, denies the occurrence or, at least, aspects of Tiffany's version of the incident, offers justifications for her actions, or all three. (*Id.* ¶¶ 10–19)

The evidence of age discrimination is extraordinarily thin. Ms. Dryden admittedly was replaced by Ms. Nan Craver who, at 60 years of age, was substantially older than Ms. Dryden. (*Id.* ¶ 20) Ms. Dryden relies on her "recollection" that Ms. Craver was replaced by a younger employee.

The evidence of racial discrimination consists principally of Ms. Dryden's claim that the supervisors charged with enforcing the security policies which she was accused of violating both were Caucasian and her assertion that five other Caucasians, including Ms. Craver, repeatedly violated the same rules but never were written up. (*Id.*) Tiffany's Ms. Ray acknowledged that she had spoken to Craver about the five piece rule about five times, to another Caucasian employee approximately twice, and to a majority of the other employees at least once. (PX XXII) Tiffany produced documentary evidence that one of the five Caucasians referred to by Ms. Dryden in fact was written up in February 1993 for a violation of the security policy. (Ray Reply Aff.Ex. A)

### Discussion

#### Summary Judgment as to Merits of Discrimination Claims

■ The standards governing plaintiff's discrimination claims are clear. In order to establish a *prima facie* case in this context, the plaintiff must demonstrate that she was (1) a member of a protected class, (2) qualified for the position, and (3) discharged in circumstances giving rise to an inference of discrimination. If the plaintiff satisfies that burden, the defense must articulate an independent, non-discriminatory reason for its action. The plaintiff then bears the burden of showing by a preponderance of the evidence that (1) the defendant's actions were

pretextual, and (2) discrimination played a role in the decision. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973); *Quaratino v. Tiffany & Co.,* 71 F.3d 58, 64 (2d Cir.1995); *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 36 (2d Cir.1994); *Fitzgerald v. Alleghany Corp.,* 904 F.Supp. 223, 228 (S.D.N.Y. 1995). The burden of establishing the *prima facie* case is "not onerous." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093.

Here, plaintiff has offered evidence which, if believed and viewed in the light most favorable to her, establishes the first two elements of the *prima facie* case on both the age and racial discrimination claims. As an Asian over the age of forty, she is a member of the classes protected by Title VII and the ADEA. Her long record of satisfactory employment by Tiffany, given the Court's obligation to accept for summary judgment purposes her version of the disputed events concerning the alleged security violations, is sufficient to create a genuine issue of fact as to her qualification for the position from which she was terminated. She concededly was discharged. Accordingly, the question whether she has made out a *prima facie* case turns on whether the evidence, viewed in the light most favorable to her, would justify a trier of fact in finding that she was terminated in circumstances giving rise to an inference of discrimination.

■ The evidence does not permit such an inference with respect to the age discrimination claim. It is undisputed that Ms. Dryden was replaced by Ms. Craver, who was substantially older. Ms. Dryden's "recollection" that Ms. Craver in turn was replaced by a younger employee is insufficient to raise a triable issue of fact because (1) the relevant focus is on Ms. Dryden's replacement, not Ms. Craver's, and (2) Ms. Dryden has offered no competent evidence of the age of anyone who may have replaced Ms. Craver.[1]

■ The claim of racial discrimination stands on a somewhat different footing. There is much to support Tiffany's contention that racial discrimination played no role here. For one thing, Tiffany employed Ms. Dryden for over twenty years. Nevertheless, Ms. Dryden was replaced by a Caucasian employee. There is some evidence that might permit a trier of fact to conclude that Ms. Dryden received more intense scrutiny with regard to security policy compliance than Caucasian employees. *See Chambers,* 43 F.3d at 36. If a trier of fact accepted Ms. Dryden's account of the alleged security violations, it might find Tiffany's alleged reason for the termination to be a pretext. Such a finding, coupled with the *prima facie* case, would permit the trier to rule for the plaintiff. *St. Mary's Honor Center,* 113 S.Ct. at 2749. The evidence of record is sufficient to raise a triable issue as to whether Ms. Dryden has proved a *prima facie* case and, if so, carried her burden under *Hicks* of proving pretext and discriminatory motive.

*New York City Administrative Code Claim*

Among the statutes upon which Ms. Dryden bases this action is Title 8 of the New York City Administrative Code. Tiffany seeks dismissal of these claims on the ground that plaintiff failed to serve a copy of the complaint on the City Commissioner of Human Rights and the Corporation Counsel as required by N.Y.C.Ad.C. § 8–502(c).

The question whether compliance with Section 8–502(c) is a prerequisite to the maintenance of an action under Title 8 has divided the courts. *Compare Walsh v. Lincoln Savings Bank, FSB,* No. 93 Civ. 1101(LLS), 1995 WL 66639, at *1 (S.D.N.Y.1995) (prerequisite); *Paladines v. Poulos,* No. 93 Civ. 9031(LLM), 1994 WL 389022, at *3 (S.D.N.Y. 1994) (same); *with Persaud v. S. Axelrod*

---

1. Ms. Dryden last worked at Tiffany on June 15, 1993 and has returned since only for a brief period on July 1, 1993, when she was informed of her termination. (Dryden Dep. 167–68, 170, 174, 177–80; Ames Dep. 41) In consequence, her professed belief or recollection as to Ms. Craver's replacement, whom she could not identify, at best is hearsay and at worst is simply speculation. In either case, it does not meet the requirement of Rule 56(c) that evidence in opposition to a motion for summary judgment be admissible in evidence.

*Co.*, No. 95 Civ. 7849(RPP), 1996 WL 11197, at *6 n. 1 (S.D.N.Y.1996) (not prerequisite): *Bernstein v. 1995 Associates,* —— A.D.2d ——, 630 N.Y.S.2d 68, 72 (1st Dept.1995) (same). Assuming that there is some difference between the protection afforded by Title 8 and other statutes upon which plaintiff relies, the possibility that the availability of a cause of action under Title 8 would have any practical impact on the outcome of this case is purely theoretical. In consequence, no useful purpose would be served by the Court deciding this question at this stage, and it declines to do so.

### Conclusion

Accordingly, defendant's motion for summary judgment dismissing the claims of age discrimination under all of the statutes relied upon is granted. The motion for summary judgment dismissing the claims of racial discrimination is denied.

SO ORDERED.